The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to draw nigh and give your attention, for the Court is now sitting. God save the United States and this Honorable Court. Ms. Mullaney. Good morning, Your Honor. May it please the Court. My name is Mary Beth Mullaney and I represent Caroline Sawyer as well as the other class members with whose Tidelands Hospital System has taken their substantial portion of their final paycheck. I will begin by what the Court has foreshadowed and where they are going by asking us to do a supplemental brief and just address that issue first. With respect to whether the District Court erred by not exercising supplemental jurisdiction, I believe that the District Court did err and they erred by not addressing the issue whatsoever and because of that the Court abused its discretion. I think that argument and I saw that it was being made by counsel has got everything upside down because Section 1367 grants jurisdiction to the Court and so the test is whether the facts are related in part to each other in the case. The Court, once it has jurisdiction, has an obligation to decide the case and what the statute does in deference to state courts is that the Court can make the decision if it wishes to based on those criteria. But that gives the Court authority. It doesn't have any obligation to do so. It has the duty to decide the case once its jurisdiction. So the real question is not whether the judge has satisfied the exceptions. The question is whether the Court had jurisdiction and that is 1367A and it seems to me your complaint alleges it. It links them all. It talks about the termination being part of the FMLA case and part of the wages case and it actually suggests maybe that wage was part of the retaliation in the complaint a little bit and you allege 1367. The defendant answers the complaint and says I agree it is 1367 and the Court exercises 1367 jurisdiction. How can you fault it for doing the job that Congress gave it? What you're saying is the Court should have avoided that but it has no duty to. That's just authorization for the Court to send it back. But you guys start with an affirmative duty that looks at the authorization to send it back and say the Court should have sent it back instead of saying why didn't the Court, I mean the Court has to exercise jurisdiction given to it. And so I think the arguments just start at the tail end and try to figure out what the elephant looks like from the rear. I mean it's a. Yes, Your Honor. I see, I understand your argument but I believe that. It's not an argument, it's an observation. It starts with the grant of jurisdiction. 1367 is a grant to the Court of subject matter jurisdiction. Yes. And do you agree that the Court had subject matter jurisdiction? Yes, I do. But I believe that when the Court dismissed the FMLA claim, then the Court had to make a finding as to why that jurisdiction would continue. The Court already has jurisdiction and is mandated to decide the case. The question is if the Court chooses to avoid it. But the Court doesn't even have to raise the issue that it's not going to. It can just decide it. And if the Court wants to send it back, it has the authority to do so. But there's nothing that says it should avoid jurisdiction that's given to it. And the statute doesn't even start that way. Yes, Your Honor. Then if that's the direction, if understanding that that's the Court's position. I'm just reading the statute. If it doesn't say that, then I'd like you to say so. But the way I'm reading 1367A, and then of course it says once you have jurisdiction, the general principle is the Court has to decide a case. That's the obligation of the Court. And the Court took jurisdiction. Now your argument is the Court should have decided to avoid jurisdiction because it had authority to do so. And sure it had authority, but it chose not to. And it doesn't have to explain why it's deciding a case with jurisdiction. It has to explain why it sends it back. Well, I believe that the Court, with respect to the South Carolina Payment of Wages Act, I believe that the District Court clearly erred by dismissing the plaintiff's Payment of Wages Act claim. Just before you turn to the merits, and I understand, maybe we ought to get to the merits, but normally I would take your concession that subject matter jurisdiction existed. But since it's subject matter jurisdiction, I can't do that. Help me understand why you think there was actually jurisdiction here. I mean, it seems like to me the two claims, so the federal claim was about why she was fired, the events leading up to being fired. And the state law claim is about what the company did after she was fired. And yes, in some vague sense, they're the two sides of being fired, the opposite sides. But why is it that you concede that they're a common nucleus of operative facts? I mean, there is a fact in the middle that is obviously relevant that is being fired, relevant to the FMLA claim. It's not clear to me why that's like an operative piece of the state law claim. But they seem to me to be just the two sides of being fired, not sort of an integrated, you know, linked set of stories. Yes, Your Honor, I believe that they're very interrelated. And help me understand, why is that? Because as a result of her being fired, that triggered the Tideland's payment of wages deduction policy. Would your claim have been different if she had not been fired, and they made the same decision to withhold the money that she owed, which allegedly the contract permitted? I'm not trying to get to the merits. I just mean, if she hadn't been fired, and they garnished her wages, however you want to describe it, right, took money from her to pay back the money she owed, that'd be the same claim. The fact that she was fired matters not to the legal theory, I think, of your state law claim. Well, I believe, especially in employment cases, that they, you know, you have to look at the fact that they are interrelated, and that it would... I totally get that, but, you know, we don't exercise jurisdiction because it'd be easier, right? Like, I mean, that's, like, what I'm trying to understand is, what fact that's necessary for your FMLA claim is operative for your state law claim? Like, what is the fact there that, you know, what we look at is a common nucleus, not a common nucleus of facts, but a common nucleus of operative facts. Like, what is the fact that you think is operative under both claims? Her termination. Why is that? So, under the elements of the state law claim, why is her termination relevant to that claim? Because the termination, in effect, set into motion the act that led to the unlawful deduction from her final paycheck. But the deduction would have happened whether, or could have happened, without being fired. Right? I mean, it's not a necessary part of that story at all. I mean, I get, like, you may want to include it, right? If you were, you know, making the arguments in front of a judge or jury, you might include the fact that she's fired, although I don't, I'm not sure necessarily why, and maybe a court would keep it out as 403, because it doesn't have anything to do with the state law claim. Well, I believe in, under the facts and circumstances of this case, Your Honor, I, it's my opinion that it does have a lot to do with it, and that had she not been terminated, then Tideland's would not have, by using this illegal and unlawful policy that they have, then they would not have taken a substantial portion of her last paycheck. I mean, you could give a narrative like you're giving, but tell me, under Gibbs' lens, how you met the nuclear, the common nucleus of operative facts, just in that framework of the law, the precedent. I mean, because everything sort of ties, if I hadn't done this, I would have been fired. What is the nucleus, you know, that common thread that's operative to both? Well, I probably, the hospital policy and her employment would be what is operative. Of course, the statute no longer relates to the Supreme Court's decision, but it's broader. Congress chose to say that it only has to relate from part, part of the same controversy. That's the hook. Yes, Your Honor. That is, that is my argument. And I must say, in your complaint, beginning at page 44, you say, the defendant is continuing to retaliate against plaintiff, and then in six paragraphs thereafter, you allege all the retaliations, including the payment employment agreement that they reduced her salary. It suggested that they was part of the retaliation. I'm not sure that's factually supportable, but that's the allegation, the connection there. Yes. At this time, if I may, I'm not sure if Your Honor had a question with respect to that. All you have to do is say you agree. I agree. I agree, Your Honor. Yes, I do agree. But I think that this, the wage policy, I know I'm here today because I think that this policy is illegal and it violates the South Carolina Payment of Wages Act, and it's been continuing for some time. I think that Tideland's Hospital has twisted this act and is using its role as an employer and also becoming a creditor as well, and I think that that's illegal under the act. I think that the district court erred by not giving the same protection to the payment of wages as it does to deductions. I think that under the statute, it's clear that you have to give an employee notice of the time and the place of when they will be paid, and by that same token, you would have to give the notice of the time and the place of when these deductions would take place. I thought she had notice in this case. I thought when she was hired, she signed that form giving notice and explaining that those would be deducted from her paycheck, and she agreed to that? May I answer the question? I'm out of time. Yes, sure. And she did not have notice of the time of the deduction. What the policy says is when you separate from employment, you could not possibly know on your first day of work when your last day of work would be. The policy sets up a final accounting. In other words, you're going to work here, and we're going to deduct from your pay bills that you incur while you're working here, and we'll account for that on the last paycheck. And she says, I agree. The only thing that's left open from the statute, the statute says the amount, I think, and while the amount is described by the amount she incurs, the specific amount can't be determined, of course, because we don't know what kind of debt she incurred. Here is some medical bills that she incurred, I gather, that were deducted in part. They didn't actually, weren't able to deduct the full amount. First of all, the policy applies even if the employee has previously set up a payment plan. My point is that she signed it and authorized and agreed to it when she was hired. Yes, well, it's my position that that policy, the bargaining power is very unfair. She had no choice but to agree to it, and she did not have a meaningful choice. But even so, she wasn't given notice of the time of the deduction. Working men and women need to know when they're going to get paid and how much they're going to get paid so that they can plan accordingly. In this case, she did not know when a substantial portion of her last paycheck was going to get taken, and it happens at the time of separation, which is at a time when you need your last paycheck the most, because that is... Wasn't that part of the policy, that it would be her last paycheck that they would account? Yes, that was, but I believe that policy is illegal because it doesn't say the time. It gives an event, but that is not the same... How could it say the time when she terminates? She could die, she could quit, she could be fired. I mean, it's impossible for a notice to give the specific time when that occurs, isn't it? Well, and that's my point. If they cannot give a specific time... Well, they gave a specific time, which is at the end of her, on her separation from the company. But I would argue that that's not a time, that that's an event, and so, therefore, she wasn't able to make plans or have notice of when, in fact, that deduction would occur. So you're making a facial challenge because it's absolutely impossible at that time she's hired to say what date she will leave. That tells you you're making a facial challenge, really. Yes, yes. Per se, correct? Yes, Your Honor. Yes, Your Honor. Should I... Your time is up, and I know we didn't get to your FMLA, so... Okay, alrighty. Thank you. But you have time reserved. Mr. Wright. Thank you, Your Honors. I'm going to apologize to the court. I have a little bit of laryngitis this morning, and I know I'll try to speak up and make sure everybody can hear me. I'm not sure where it came from. I want to go back to the question that Justice Niemeyer asked about the jurisdiction question. Don't promote him too quickly. I'm still a judge. I apologize. You've asked a very pointed question, and I'm in a very difficult situation. My client prevailed below in a very well-reasoned opinion by the district court. It explained why it dismissed on merits the wage payment plan. We were asked to brief the issue of jurisdiction. We gave a half-hearted effort to explain that, yes, the court had jurisdiction. I'd love to be able to hold on to a win that I already had. But when push comes to shove, and in all candor to the court, I don't think the court ever had jurisdiction in that stateful complaint. As Justice Niemeyer pointed out, 1637 talks about the same court of operative facts. No, it doesn't. It doesn't. It talks about facts that are part of the same controversy. It's a broad linkage, and it's 1367A. 1367A says supplemental jurisdiction over other claims that are so related to claims in the action that they form part of the same case of controversy. And then the United Minds, the Mind Workers case. Well, that's in the common nucleus of operative fact. That's right. But this was prompted pursuant to that, but I suggest respectfully this is broader than the nucleus of operative fact. Counsel, I think we've addressed that in a prior decision. Are you familiar with the Axel Johnson case where we said that 1367 and Gibbs are not different? I was not aware of that case, but that's the position I've taken from the very beginning. And that's, I think, the point that's argued in our brief. I think the point I'm making is that whichever direction the court elects to go, I think the real question here is not did the court err by not continuing to exercise jurisdiction over this case, but whether it ever had jurisdiction in the first place. Well, that's the only question we really have to answer is whether it had jurisdiction. And you in your answer said it did have jurisdiction. It doesn't confer jurisdiction. Parties can't confer jurisdiction, but you agreed to it. A plaintiff alleged it. You agreed to jurisdiction in your answer, and the court exercised it. And so now the question is does the complaint support a sufficient connection between the two causes of action where a court can decide the case as a matter of power? And again, as I pointed out in our brief, we basically said, oh, yes, it does. And the court should continue to exercise jurisdiction. And so in your brief, this is a first-time announcement you're making here in oral argument, isn't it? I'm merely commenting to the court that if the court is suggesting that there was not jurisdiction, then the bottom line is it's at this point. Well, we're questioning whether it is, but your position up to this point before coming into court was there was jurisdiction. That's exactly right, Your Honor. We all entertain that erroneous assumption. So help me understand why that assumption's erroneous, sort of the opposite of your colleague. I think this is quite hard, so I've pushed her, and I'm going to push you a little bit. So what I would have thought you would have said, and I think Judge Niemeyer's point about the retaliation is a separate point, but what I thought someone defending jurisdiction would say would be, listen, they are the same operative facts here, because they both depend fundamentally on the employment, right? Without the existence of employment, we all agree that both of these claims fail, right? There's no FMLA claim if you're not an employee, right? Or can you bring the state law claim, this being asserted here, without being an employee? Indeed, not just being an employee, but it's the nature of the obligations of that employment, right? In the FMLA case, it's the statutory obligations of employment, and in the state law claim, the allegation is that it's the contract, right? And so, you know, while we talk about them being sort of a common nucleus of operative facts, it seems like to me, as long as we've got part of that true, right? That is, both of these claims fundamentally depend on her employment with your client, right? That that is enough under Gibbs and or 1367, to the extent there's a difference between there. I'm not sure what it is, but under both of those standards, that's enough. They both stem from not the firing, put the firing aside. I think the firing doesn't help. But they both stem from the employment relationship. And so you have to prove an employment relationship in both claims here. So why wouldn't that be enough? And again, I'm not arguing against you. I know, but I appreciate your honesty with the court this morning. You are grappling with the same problem we're grappling with. And so I'm not trying, you know, this isn't a gotcha moment. I'm looking for help, right? And so I want to get your take on why, I mean, you're familiar with the case. You know, you've spent a lot more time with it than I have. And you know more about these causes of actions than I do. But why isn't that the sort of operative fact here is the existence and nature of the employment relationship, whether she was fired or not, is sort of a sideshow. It's really the employment relationship itself that's the operative piece. I think that there have certainly been cases decided by this court dealing with other employment circumstances, which also include a wage payment claim where someone lost some element of wages as a result of having been terminated. We cited those in our brief. And the court has said there's jurisdiction and found that the jurisdiction existed. It is entirely possible, as we've stated in our brief, that the fact that this arises out of the employment relationship, it all comes about as a result of the termination of her employment. That may be enough to constitute the same claim of controversy, or using the words of Mineworkers versus Gibbs, arises out of the same interrelated series of events and transactions or the common nucleus operative facts would ordinarily expect them to be all decided in one proceeding. So I think, yes, that may be enough. I'm merely expressing my concern that Section 1367A and using the same case and controversy language, it does not. One distinction might be a little bit that the FVLA, the violation, the alleged violation, cannot occur unless you are an employee at the time. But the wage payment can occur when you're not an employee because you're gone. It's a collection. Is that correct? Because they're making the accounting. You could be separated, whatever. You're gone, but they pay you afterwards and they can enforce it. Can they not? Again, I'm candidly saying I think I'm fine in the way we go here. And I think the answer to your question is yes, they arise out of the termination of the employment. But the wage payment authorization, the deduction authorization could arise at any point in time during the employment relationship. Well, but it had to arise. I mean, yes, one happens before firing and after firing. That's what we talked to your colleague about. But they both are dependent on the employment relationship. When we talk about the state law claim, and I'm happy for you to talk about it at some point. I understand that that's a big part of your argument. It's fundamentally about this contract claim, right? I mean, it's effectively about her employment contract. Whether they can withhold the money or not is a question about that employment contract. And so that strikes me as sort of at least a reasonable way of thinking about these both arising out of the employment relationship. Well, they both arise out of the employment relationship. So I would suggest to you that they both also have separate issues involved. They do, but just to carry forward a little bit of those questions. I think the notion that there's an employee-employer relationship is very important and may even be decisive. But I think this case presents the notion that there is a controversy between the employer and the employee. It's not just the relationship, but there's a controversy of the relationship and the controversy matured. In this case, upon her termination. And the termination then triggered two events. One, a claim under FMLA, and two, a claim that the last pay deduction, which is set forth in the policy in the final check, the last pay deduction was challenged. Both arose, number one, out of the employer-employee relationship. Two arose out of the termination, which was the controversy between the two. That she was separated from them. And the fallout was an FMLA claim and a claim for wages or challenging the wage withholding. Because it says that will be accounted for in the final paycheck. I think that my answer to that question is the fact that the FMLA issue is one of intent. It's talking about because she had a serious health condition. Oh, it's different. It's clearly different. That's beside the point. The question is whether it's part of the same controversy. The statute says part of the same controversy. And the question is whether the things I itemized to you was part of the same. The controversy was the separation of an employee-employer relationship. That's the controversy. The consequence of that was twofold, as alleged in the complaint. Actually, manifold, because there was retaliation also alleged, too. But the main consequences were she lost a job and she lost pay. And, again, I think that may be enough to establish 1367A jurisdiction and why this court should continue to address the merits of the... I mean, this thing is an efficiency thing. Congress, we don't like to fragment the cases unnecessarily. And if you're right about your new position, you're just going to have to try that case again in state court. It's already been decided. And my only answer to that would be, Your Honor, that under 1367B, the tolling provision for the statute of limitations would not have been deployed if the court never had jurisdiction. And it's as if the case had never been filed. Well, that's another issue. You're going to have to argue that issue differently. I'm not sure you're right about that. Let me turn to the merits. I think that Justice Richardson has already referred to the fact that there was a policy she had when she started her employment during orientation. It tells her, as Justice Niemeyer suggested, when the deduction was going to be made, how the deduction was going to be made, what the actual calculation was going to be. It was going to be from her final paycheck. It told her specifically that she would be entitled to keep anything up to a minimum wage and everything else would be subject to deduction. The statute itself is a notice statute. And it gave her notice when those things were going to happen. It told her at the time of your termination, this is what will happen. She agreed to it. And she signed it. Moreover, twice subsequent to that, she went through training programs, or she was supposed to have gone through. She signed off on going through training programs where the exact same policy was discussed and shared with her. And the language of the policy never changed. Your colleague says that you've got to have a date certain. It's got to be March 7, 2022 at 7 p.m. The time has to be specified. Not the time of an event, but the time must be specified. In essence, the statute sets up a system that can, as the chief alluded to, can never be satisfied. Which, you know, maybe that's what state law was designed to do. But help me understand why we shouldn't think about time as requiring some degree of specificity that was lacking here. I don't think there is a lack of specificity. I think there is a degree of specificity. There is some, but you agree it doesn't have, like, Tuesday, March 17, 2019. So why is that not required? For that contract to be effective, why is it not required to say we're going to withhold this money on Tuesday, March 17, 2027? We've got to figure out that date going forward, and we're just going to pick that date. Well, I think what the statute, 411040C, specifically says that it is the obligation of the employer to notify each employee at the time of hiring in terms of conditions of employment. Section 411030A says that an employer may not withhold unless the employee had been given written notification of the amount in terms of the deduction. Well, she was told exactly the terms of the deduction. And again, I think the cases say that this is a notice statute. It doesn't require specificity. Ross v. Lingard was a case where there was a question about when was someone going to be paid a bonus, and the employer kept delaying the bonus for unstated reasons, and the court said that's not good enough. You don't have to give a specific date,  when is this going to happen. There was specificity here. She was told, when you are terminated, this is what will happen. And I think that's all that is required under the state statute. And I think that as Chief Justice Gregory has pointed out, if at the time of hiring, which, by the way, her employment started in 2010, they would have had to have known that in October of 2018, she was going to be fired, and they were going to tell her, this is the date you're going to be fired, and therefore this is how this deduction is going to take place. No one knows that. We're not fortune tellers. We can't tell that. And you're basically writing that statute out of existence, which is not consistent with ordinary statutory construction. In this particular case, she was notified in 2017 of the debt that she owed. She was told by virtue of the policy itself, the circumstances under which it would be withheld and how much would be withheld, how it was going to be calculated. The only thing she wasn't told was the specific date that it would occur and the specific amount of money. And no one would know that in 2010 when she was hired. And that would totally write the statute out of existence, which I don't think is what is appropriate. Again, cases in South Carolina specifically say this is a notice statute, and I think that she was given adequate notice. So therefore, we think on the merits, the judge's decision should be upheld. With regard to the issue of the family medical leave-back claim, there are two claims. One's a retaliation claim. One is an interference claim. Let me deal with the retaliation first. With regard to the concept of retaliation, we do not contest the fact that she can make a primate patient case. We have articulated a legitimate, non-discriminatory reason for her termination, which was the receipt of two written Class 2 warnings. The first warning was when she didn't get BLS training, basic life-saving training, back in 2012, and she was given a Class 2 warning. In fact, that's a state requirement. She couldn't work as a nurse without having that training. And therefore, that's considered a very serious offense. She received a Class 2 warning. She admitted that she knows of nobody else who didn't get a Class 2 warning when they didn't get that training. She's not aware of anybody who didn't get a warning for that. The second warning occurred when she threatened a fellow employee. I won't repeat the words of what she said. They're in our briefs. But she threatened to get into a fight with a fellow employee because she didn't like the way she gave the report. There are written statements from the employees who witnessed that event. They are a part of the record. The supervisor, while she didn't know about it until a month later, immediately conducted an investigation. She interviewed everybody that was there, and she asked plaintiffs to give a written statement, and the plaintiff refused. So based on that, she concluded that this person had threatened a fellow employee, and that's a Class 2 violation. And that constitutes two Class 2 violations constitute a basis for discharge, and that's why she was fired. She was also fired for having received three warnings in a 24-month period. But that's irrelevant, and the court said so, because there is one reason that can be substantiated by the record, which was receiving two Class 2 warnings. And under those circumstances, there is no evidence of pretext. She's not been able to show that anyone else who got two Class 2 warnings wasn't fired. She acknowledged she knew if she got two Class 2 warnings, she would be terminated. And there is nothing in the record to suggest any sort of pretext other than counsel's argument that, well, I don't think she should have gotten a Class 2 warning, or I didn't say that. We've cited a case in our brief, which stands for the proposition. It doesn't matter whether she says she said that or not. It's whether the employer reasonably and in good faith believed that she said that, and I think that the evidence supporting the investigation explained why that was a good faith belief. And finally, with regard to the interference claim, the only issue here is did the fact that she was disciplined at some point in time by getting a written warning constitute harm that would trigger an interference claim? And our position is she received no harm. She suffered no harm. The termination occurred because she got two Class 2 warnings, not because she may have had an absence that may have been covered by the family medical leave at some other point in time. Unless you have any further questions, my time is exhausted. Thank you, Mr. Bright. Ms. McLaney? First, before I get to the FMLA issue, I just want to address very quickly my colleague's argument about time and saying that the policy did, in fact, give employees time, and I respectfully disagree. Let me ask you on this. You know, this is sort of like arguing Alice in Wonderland. You want somebody to say in a notice that something will happen when that is totally conditional. It's conditional on her incurring medical bills, and it's incurring and it's dependent on when that's going to be paid.  Tell me what you think the notice should have said. If their policy was you can incur bills at the hospital and we will account for them in your final paycheck. Now, the other alternatives might be as you incur the bills, which still wouldn't be on a specific date because she incurs a bill on June 5th, but that can't be known at the time of notice. Or they could say we'll do it on January 1st of every year. They could do that. But their policy was at the end when you're terminated. Now, it seems to me it's totally nonsensical to say the statute isn't satisfied because it doesn't predict accurately when she's going to be terminated or separated or quit or die. Absolutely. And so, therefore, the policy is illegal. But tell me what the policy should say. There shouldn't be such a policy in South Carolina. Well, they don't. The South Carolina law doesn't. They just say if you're going to deduct, you have to give notice. No, Your Honor. The South Carolina does have a policy. The state of South Carolina, unlike many states, will not allow wage garnishment for medical bills. This is not garnishment. Well, it's a de facto garnishment. And so, by that fact, this policy is illegal. By the same token, you couldn't tell someone, you know, you're going to be paid when your review meets expectations, and then we will pay you. So you're saying that it is against the law of the state to have any kind of bills because they talk about other types of bills. If you purchase a gown or you purchase equipment or do something else and put it on your account and they pay that from your wages, you say that's an illegal policy? Well, putting it on your account is different. For instance, you could deduct for lunch if you say, you know, you can put, you know, once a month we're going to take out, you know, whatever you ate in the cafeteria on your second paycheck so that the person will know, okay, you know, I'm not going to have $50 in my last paycheck. But why is that any more specific, right? We don't know what you're going to pay for lunch. Maybe I get a sandwich today, I get a soup and salad tomorrow, right? It's the second paycheck, but I don't know what date that is. I can figure it out based on the events, but I don't know that that's like March 17th. But, yes, you do. Believe me, working class people know exactly what date their paycheck is going to be. And their bills and... No, no, they know it, but it's not in the notice, right? Like the notice is just an event. Yes, they can figure it out. That's correct, but that's different than a debt. That's something that's a meal. That's something part of their employment. But this, the hospital bill is a separate contract. It has nothing to do with their employment. It's separate, and not only is it... It's a policy of their employment, and it relates to certain specified expenses. Like if you lose a phone that's given to you by the hospital, you have to pay for it. It's right here in the policy. If you buy a gown or tools, you have to pay for them, and it's part of the policy. So the hospital says we're hiring you, and if you incur expenses from the hospital during that time of a particular ilk, then we will deduct that with your final paycheck. The only part of the policy that I'm here today on is the part that pertains to hospital bills and being a debt collector. Not only is the hospital... It's basically subtracting things that she has agreed to pay for and agreed to have it deducted from her by signing that to have it deducted from her salary. But she's only agreed to pay for it because she needs a job and because she needs medical care. It's a condition of the job. But if you work for Citibank, Citibank should not be allowed when you leave your last day of employment to take your last paycheck because you haven't paid off your credit card bill. That is... Why not? Why not? Because it has nothing to do with your employment. If you agree to it. Because it's unconscionable. If you work for the bank and the bank says we're going to give you a credit card from our bank and you can use it, but on the last day you leave, you agree to pay up in full the credit card balance. Part of your employment. Is that illegal? Well, I think the credit card bill is different than medical care. Well, you just used the medical bill. Yes. Well, that's... Yes. But I do... Yes. I think in the case I cited in my brief, the Costco case in California, the court did find that was illegal because they found that the employer was getting a benefit from that by the interest rate that they were getting from the credit card. So, yes, Your Honor, I do think that that's illegal. I think that... That's what the agreement is. You pay off the balance and that you agree to pay off any outstanding balance on the credit card we issued to you when you leave your employee, the day you leave. And if you don't pay it then, we will subtract it from your last paycheck. That's the agreement you sign when you work for the bank. You say that's illegal? Yes, because I think you should have to go through the garnishment. I don't think that you should be at a distance... You know, a garnishment is a collection device where the creditor goes to the debtor's employer. The creditor is independent of the employer. Garnishment is a collection procedure. So, let's keep garnishment out of this. This is a method by which the employer accounts for debts between the employer and the employee incurred during the employment. But it's debts that is a benefit to the employee, to the employer. Not to the employee. The employee got medical treatment. The employee gets a robe. The employee gets a reimbursement, gets a new phone. I mean... I don't think by virtue of being the fact that you are an employee, that you should be subject or be at more of a disadvantage than someone who is not an employee. It depends what you agree to. You agree to it because you needed a job. And that's why you agree to it. I believe my time is up, unless your honors have any additional questions for me. Well, I was going to try to give you... I know we've been going long, but I'd like to try to be fast. You started off, you wanted to talk about FMLA. Yes. Then you went back to... Yes, thank you. So, you never came back. So, I'm going to give you three minutes. Thank you so much, Your Honor. I really appreciate that. First, I disagree with my colleague and with the district court in that with respect to disciplining somebody for an FMLA-related absence is absolutely a harm. That is the very purpose, and that is the very intent, to allow somebody FMLA leave, especially intermittent FMLA leave. That leave allows you to take that if you are sick or if a family member is sick. And by disciplining someone for taking that leave, that is a harm, because then the employee, of course, is afraid to take leave when they are sick or when they need it because they don't want to lose their job. And so, therefore, they structure their leave accordingly, and it essentially makes the FMLA intermittent leave null and void if you're going to discipline somebody for taking it. That interferes, by definition, that interferes with the FMLA leave. And in this case, this was especially egregious because they were saying she got written up because she didn't use the words FMLA when she called in to say,  What's your response to the argument that we just heard that she incurred two Class II warnings and that the policy of the company is when you incur two, you'll be terminated? Yes, well, first of all, Two Class II were not FMLA-related. Yes, yes, Your Honor. First of all, I disagree. She denied threatening anyone. I understand, but that's the reason they gave her the warning, and there was an investigation. She disputes that, but they concluded it was not an FMLA issue. It was threatening a fellow employee issue, so they gave her a Class II warning. But my question is, they allegedly had two Class II warnings, right? Allegedly, yes. And I wanted to point out, Mr. Bright said something which was incorrect. When he said they immediately did an investigation, that is not correct. He said a month later. Okay. He said after she learned a month later, he said, and then she immediately, when she learned, she conducted the investigation. Okay. Well, I think that with respect to the, they didn't even know what date she quote-unquote supposedly threatened an employee. She denied threatening the employee. And to answer your question, Your Honor, I believe what the district court did was engage in fact-finding, which was an issue that should have been handled by a jury and not by a judge. With respect to whether in fact she had or had not incurred the second Class II warning, I believe that there was enough. Is there any dispute she was issued two Class II warnings? No, Your Honor, there is not. But I do believe there was a dispute with respect to whether the second Class II warning, whether in fact she had threatened someone, and also whether in fact it was a Class II warning. Even had she done the conduct alleged, it could have very easily been a much lesser offense. But the same supervisor that wrote her up for not using the words FMLA when she called in sick, is the same supervisor that decided that it was a Class II warning. And so therefore you could see this supervisor's discriminatory animus towards my client and interfering with her ability to take FMLA. As my client stated, she felt that this supervisor did not want to be burdened by the fact when she used her FMLA by finding other people to come in and work. So therefore she wrote her up for the FMLA, and she trumped up this Class II warning to terminate her. So I believe that there absolutely was FMLA interference and FMLA retaliation. Great. Thank you, Ms. Mullaney. Thank you. Mr. Bright, thank you for your arguments. We'll come down and greet counsel and proceed to our next case.
judges: Roger L. Gregory, Paul V. Niemeyer, Julius N. Richardson